UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE N**09 - 20527 ML-LENARD**

In Re: Request from Colombia
Pursuant to the Inter-American
Convention on Mutual Assistance
in Criminal Matters in the Matter of
David Barros Velez

FILED by _____ D.C.

MAR - 3 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**MAGISTRATE JUDGE
GARBER**

## APPLICATION FOR ORDER PURSUANT TO
## THE INTER-AMERICAN CONVENTION ON
## MUTUAL ASSISTANCE IN CRIMINAL MATTERS AND
## <u>TITLE 28, UNITED STATES CODE, SECTION 1782</u>

The United States of America petitions this Court for an Order pursuant to the <u>Inter-American Convention on Mutual Assistance in Criminal Matters</u>, as well as 28 U.S.C. §1782, and its own inherent authority, to appoint John C. Shipley as Commissioner to collect evidence from witnesses within the jurisdiction of this Court and to take any other action as is required to execute the attached request from Colombia made pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters.

In support of this application, the United States is submitting the accompanying Memorandum of Law. For the reasons stated in the Memorandum, the United States respectfully

requests that the Court grant this Application. A proposed order is being submitted for the Court's consideration.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By:     _____

JOHN C. SHIPLEY
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0069670
99 NE 4th Street
Miami, Florida 33132
Telephone No. (305) 961-9111
Facsimile No. (305) 530-6168
E-Mail Address: John.Shipley@usdoj.gov

2

COMMISSIONER'S SUBPOENA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TO: _____

_____

_____

I, John C. Shipley, an Assistant United States Attorney for the Southern District of Florida,

acting under the authority of the Inter-American Convention on Mutual Assistance in Criminal

Matters, and under Title 28, United States Code, Section 1782, for the purpose of rendering

assistance to Colombia, command that you appear before me in Room 800, in the James Lawrence

King Federal Building located at 99 NE 4th Street, Miami, Florida, on _____, 2009, at ____ a.m.,

to provide testimony/documents regarding an alleged violation of the laws of Colombia, namely,

illicit enrichment, and that at the time and place aforesaid you provide the following:

For failure to attend and provide testimony/said documents, you may be deemed guilty of

contempt and liable to penalties under the law.

Dated:

COMMISSIONER JOHN C. SHIPLEY
Assistant United States Attorney for the
Southern District of Florida
Telephone No. (305) 961-9111



**FISCALIA**
GENERAL DE LA NACION

U 0 0 1 5 5

OFFICIAL TRANSLATION Number....................of a document written in SPANISH, to which for identification purposes the seal of the Office of International Affairs, Office of the Attorney General is affixed.

## LETTERS ROGATORY REQUESTING INFORMATION OR EVIDENCE TO A FOREIGN AUTHORITY

File Number ████████████0362

The undersigned, Prosecutor 14 delegated to Criminal Courts in and for the Circuit, Unit of Public Administration in the city of Armenia, Department of Quindío, Republic of Colombia,

Does hereby pray

The judicial authority in Miami, Florida, United States of America finds out and reports this Office the following:

1.  Whether at BANK OF AMERICA, Miami, Florida, Brickell branch, Mr. DAVID BARROS VELEZ, lawyer, holder of Colombian identity card number ███1320 issued in Armenia, Republic of Colombia, born in Armenia, Quindío on█████, 1956, son of RUTH VELEZ DE BARROS, holds account number ████████7378.

Likewise, establish whether there are other accounts at that branch bank held under the name above referred.

In the event, accounts are being held, please send information about the opening and closing date, supporting documents, balance and movements during the time the account was in effect, likewise, if possible, to send the name and identification of the natural persons or establishments which had made deposits in said account as well as those who had been got money from said account.

2.  Whether at BANK OF AMERICA, Miami, Florida, Brickell branch, the company BLACKMAN OVERSEAS CORP., corporation incorporated in the British Virgin Islands with corporate address in Miami, 782 Le Jeunne Rd., Florida 33126 holds account number████████7612.

In the event, accounts are being held, please send information about the opening and closing date, supporting documents, balance and movements during the time the account was in effect, likewise, if possible, to send the name and identification of the natural persons or establishments which had made deposits in said account as well as those who had been got money from said account.

3.  Find out whether the company BLACKMAN OVERSEAS CORP., operates in Miami at 782 LE Jeunne Rd., Florida 33126.

In the event the company exists, please find out commercial or professional activities or financial activities it develops, who is in charge of the same, who is or are its legal agents and which links do they have with Mr. DAVID BARROS VELEZ, lawyer, holder of Colombian identity card number ███1320 issued in Armenia, Republic of Colombia, born in Armenia, Quindío on█████, 1956, son of RUTH VELEZ DE BARROS and Ms. LUZ ELENA ISAZA VELASQUEZ, holder of Colombian identity card number ████6494 issued in Armenia, Quindío, born on█████, 1958 in Calarcá, Quindío, lawyer.

FACTS



Facts in this judicial cooperation requested are described as ILLICIT ENRICHMENT OF PUBLIC SERVANT which was allegedly committed by Mr. DAVID BARROS VELEZ when he was in office as Municipal Major of the city of Armenia, Quindío from 2004 to 2007.

Indeed, according to evidence attached to the investigation, it was known that the public servant mentioned along with Ms. LUZ ELENA ISAZA VELASQUEZ handled an account under the FOREX system at the company FIT INTERNATION GROUP, which account was opened with the amount of fifty thousand United States dollars (US50,000) on May 5, 2006 and was closed with three hundred eighty-four thousand (USD384,061,050) on February 6 of 2008, monies which were not declared as income by the former Mayor during the time he was in office as such; in addition, it is known that before he took office he was in a troubled financial situation which make us presume that he increased his patrimony in an unjustified manner while in office as Mayor and through diverse criminal behaviors against public administration.

## CRIMES UNDER INVESTIGATION

The crime under investigation according to the Colombian criminal legislation is described as ILLICIT ENRICHMENT, Colombian Criminal Code, Act 599 of 2000, Book II, Title 5, Chapter 6, article 412 which reads:

*"The public servant who during his involvement with the administration or who had performed public functions and obtains in the two following years, for him or other, an unjustified criminal patrimony, provided that the behavior does not constitute a crime, shall incur in prison from six to ten years and fine equivalent to two times the amount of the enrichment without exceeding the equivalent to fifty thousand monthly minimal wages in force and it is banned to exercise rights and public functions from six to ten years".*

## IMPORTANCE OF EVIDENCE REQUESTED

The relevancy of evidence requested consists of determining and corroborating if the people under investigation own or held monies at the financial institution referred and if the money is the product of non-justified monies during the exercise of DAVID BARROS VELEZ as municipal Mayor of Armenia, taking into account that the monies deposited at the Forex account were debited from the accounts which this office requests the foreign authority to investigate.

## ENCLOSURES

Attached hereto, it is sent an authorization for selective search on databases granted by the Criminal Municipal Judge with functions of control of guarantees considering that according to article 244, Act 906 of 2004, Criminal Procedure Code and Decision C-336 of 2007 of the Supreme Court of Justice of Colombia in the event of information on databases which imply the access to confidential information of the indicted or accused, a prior and subsequent authorization by the Judge of control of guarantees is required.

## REQUEST

I do hereby kindly request that all evidence be sent along with certification that it was validly collected according to your procedural law.

The Prosecutor 14 delegated to Criminal Courts in and for Armenia, Quindío, Republic of Colombia, does hereby offer reciprocity for similar cases pursuant to Colombian laws and international treaties and customs in force and avails the opportunity to express the assurances of his highest consideration.

JORGE EDUARDO GARCIA GIRALDO
Prosecutor 14

Armenia, Quindío, Republic of Colombia, October 27, 2008

--

Authentication proceedings
Sectional Director of Prosecutor's Office
--



APOSTILLE

CERTIFIED TO BE A TRUE AND COMPLETE TRANSLATION
Translator: Suzette Barboza Barboza
Bogotá, D.C., November, 2008

LUZ SUZETTE BARBOZA BARBOZA
TRADUCTOR - INTERPRETE OFICIAL
RES. 2455 - MIN. JUSTICIA COL.
OFICINA DE ASUNTOS INTERNACIONALES
FISCALIA GENERAL DE LA NACION



# REPUBLICA DE COLOMBIA
## MINISTERIO DE RELACIONES EXTERIORES

# APOSTILLE
### (Convention de La Haye du 5 Octubre 1961)

**País:** REPUBLICA DE COLOMBIA
(Country: - Pays:)

**El presente documento público**
(This public document - Le présent acte public)

**Ha sido firmado por:** BARBOZA BARBOZA SUZSETTE
(Has been signed by: - A été signé par:)

**Actuando en calidad de:** TRADUCTOR OFICIAL
(Acting in the capacity of: - Agissant en qualité de:)

**Lleva el sello/estampilla de:** TRADUCTOR E INTERPRETE OFICIAL
(Bears the seal/stamp of: - Est revêtu du sceau de / timbre de:)

**Certificado**
(Certified - Attesté)

**En:** BOGOTA D.C.
(At: - A:)

**El:** 11/6/2008
(On: - Le:)

**Por:** APOSTILLA Y LEGALIZACIONES
(By: The Ministry of Foreign Affairs of Colombia    - Par: Ministère des Affaires Étrangères de la Colombie    )

**No:** AILG152926530
(Under Number: - Sous le numéro:)

Digitally Signed by:
Ministerio de Relaciones Exteriores de Colombia
NELSY RAQUEL MUNAR JARAMILLO
Reason: DOCUMENT AUTHENTICITY
Location: Bogotá - Colombia

**Firma:** (Signature:)

**Nombre del Titular:** PROCESO ████████0362
(Name of the holder of document: - Nom du titulaire:)

**Tipo de documento:** TRADUCCION CARTA ROGATORIA
(Type of document: - Type du document:)

**Número de hojas apostilladas:** 3
(Number of pages: - Nombre de pages:)

████████4445

La autenticidad de esta apostilla puede ser verificada en el Registro Electrónico que se encuentra en la siguiente página web:
The authenticity of this Apostille may be verified by accessing the e-Register on the following web site:
L'authenticité de cette Apostille peut être vérifiée en accédant l'e-Registre sur le site web suivant:

## www.cancilleria.gov.co/apostilla

 

D.A.I.
BOGOTA, D.C.



06 NOV. 2008

**URGENTE VÍA FAX**

Doctor
**JEROLD Mc MILLEN**
Agregado Judicial
Embajada de los Estados Unidos de América en Colombia
Ciudad

**REF. CARTA ROGATORIA A E.U.A. DEL 27/10/08**
   **DAVID BARROS VÉLEZ**
   **ENRIQUECIMIENTO ILÍCITO DE SERVIDOR PÚBLICO**
   **RADICADO No.** ■■■■■■■■■■■■■0362

Respetado Señor Agregado Judicial:

De acuerdo a la Convención Interamericana de Asistencia Judicial Mutua –Nassau, Bahamas de 1992, adjunto al presente el oficio No. 145 del 27 de octubre de 2008, librado por el doctor Jorge Eduardo García Giraldo, Fiscal 14 Delegado ante los Jueces Penales del Circuito de Armenia, por medio de cual remite carta rogatoria de la referencia, a fin de que las autoridades estadounidenses se sirvan remitir la información solicitada.

Lo anterior, para que por su intermedio se le dé traslado a las autoridades de Estados Unidos correspondientes.

Cordialmente,

FRANCISCO JAVIER ECHEVERRI LARA
Director de Asuntos Internacionales

Anexo: lo anunciado
ASA

**Dirección de Asuntos Internacionales**
Diagonal 22B (Av. Luis Carlos Galán) No. 52-01 Telefax 5702000–4149000 Ext. 2563
www.fiscalia.gov.co
Bogota -Colombia

DE :DIR.ASUNTOSINTERNACIONALES        NO.DE TEL :5702000 - 2564        06 FEB. 2009 12:55PM  P1





**FISCALIA**
GENERAL DE LA NACIÓN

Bogotá D.C.,  **0 6 FEB. 2009**
DAI

**0 0 1 1 7 1   URGENTE VÍA FAX**

Doctor
**PETER VINCENT**
Agregado Judicial
Embajada de los Estados Unidos en Bogotá
Ciudad

**ASUNTO. CARTA ROGATORIA A E.U.A. DEL 27/10/08**
            **DAVID BARROS VÉLEZ**
            **ENRIQUECIMIENTO ILÍCITO DE SERVIDOR PÚBLICO**
            **RADICADO No. ▮▮▮▮▮▮▮▮▮0362**

Respetado Señor Agregado Judicial:

De manera atenta y dando alcance al oficio DAI 011347 del 6 de noviembre de 2008, adjunto al presente la comunicación No. 082 del 4 de febrero de 2009, con su respectiva traducción, librada por el doctor Jorge Eduardo García Giraldo, Fiscal 14 Seccional de Armenia, por medio del cual **remite información adicional relacionada con la carta rogatoria de la referencia**, la cual fue remitida debidamente legalizada.

Cordial saludo,

**FRANCISCO JAVIER ECHEVERRI LARA**
Director de Asuntos Internacionales

Anexo: 3 folios
ASA

*182-30272*

DIRECCIÓN DE ASUNTOS INTERNACIONALES
DIAGONAL 22 B (Avda. Luis Carlos Galán) No. 52 - 01 EDIFICIO (C), PISO 4 BOGOTA, D.C.
CONMUTADOR 5702000 EXT. 2560/2562/2563 FAX 2564
www.fiscalia.gov.co

DE : DIR. ASUNTOS INTERNACIONALES      NO. DE TEL : 5702000 - 2564      06 FEB. 2009 12:55PM  P2

DE :                          NO. DE FAX :                    04 FEB. 2009 11:02AM P1



**FISCALIA**

**FISCALIA CATORCE DELEGADA**
**JUZGADOS PENALES DEL CIRCUITO**

DIR. DE ASUNT. INTERNAL

Armenia Q., Febrero 04 de 2009                000564 FEB 4'09 12:09
Oficio No. 082                              000564 FEB 4'09 12:09

Doctor
**FRANCISCO JAVIER ECHEVERRY LARA**
**Director Oficina de Asuntos Internacionales**
**Fiscalía General de la Nación**
**Fiscal jefe de Unidad de Fiscalías**
Bogotá

Atendiendo requerimiento telefónico de la Dra. AIDA LUZ SEGRERA, asesora de dicha oficina, en virtud a solicitud de la autoridad encargada de tramitar la carta rogatoria remitida a su despacho mediante oficio No. 145 del 27 de Octubre del año 2008 en radicación No. ████████████0362 que por el delito de ENRIQUECIMIENTO ILICITO DE SERVIDOR PUBLICO adelanta este despacho, comedidamente me permito exponer lo siguiente

El vínculo o la relación de los investigados DAVID BARROS VELEZ, LUZ ELENA ISAZA VELASQUEZ, la empresa BLACKMAN OVERSEAS CORP, con las cuentas que al parecer reposan en el " BANK OF AMERICA" con sucursal en la ciudad de Miami, se obtiene de los documentos obtenidos de la empresa "Forex Fit Internacional Group" cuando los señalados abrieron en la misma la cuenta Forex.

Significa lo anterior que cuando aquellos diligenciaron los respectivos formatos y documentos para la apertura de dicha actividad financiera, consignaron en los mismos, que poseían cuentas en el "BANK OF AMERICA" en el caso de BARROS VELEZ con el número de cuenta ████████7378 y de "BLACKMAN OVERSEAS" con el número de cuenta ████████1612, esta última empresa aparece representada por los indiciados BARROS VELEZ e ISAZA VELASQUEZ.

En estos términos contesto lo solicitado y en espera de cualquier inquietud que pueda resolver.

DE : DIR. ASUNTOS INTERNACIONALES        NO. DE TEL : 5702000 - 2564        06 FEB. 2009 12:56PM   P3

DE :                              NO. DE FAX :                      04 FEB. 2009 11:03AM   P2

**FISCALIA**

Con toda atención y respeto

JORGE EDUARDO GARCIA GIRALDO
Fiscal Catorce Seccional

Fiscalia Catorce Seccional. Palacio de Justicia Fabio Calderón botero. Oficina 318. Teléfono
7410903 Ext. 146 Armenia - Quindio

DE : DIR. ASUNTOS INTERNACIONALES        NO. DE TEL : 5702000 - 2564        06 FEB. 2009 12:56PM  P4

Página 1 de 1

## Aydaluz Segrera Alarcon

**De:**      Suzsette Barboza Barboza

**Enviado el:** Miércoles, 04 de Febrero de 2009 11:18 a.m.

**Para:**    Aydaluz Segrera Alarcon



**FISCALIA**

Delegate Prosecutor's Office 14  before the Criminal Courts in and for the Circuit

Armenia, Q. February 14, 2009
Official Communication 082

Doctor FRANCISCO ECHEVERRY LARA
Director Office of International Affairs
Office of the Attorney General
Chief Prosecutor of the Unit of Prosecutor's Office
Bogotá

In response to conversation held with Dr. AIDA LUZ SEGRERA, advisor to the office, at the request of the authority commissioned to execute the letters rogatory sent to your office with official communication 145 of October 27, 2008, File number ▮▮▮▮▮▮8362 for the offense of ILLICIT ENRICHMENT OF PUBLIC SERVANT submitted at this Office, I do hereby express:

The link or connection of the individuals under investigation, DAVID BARROS VELEZ, LUZ ELENA ISAZA VELASQUEZ, the firm BLACKMAN OVERSEAS CORP., and the accounts held at BANK OF AMERICA, Miami Branch is inferred from the documents collected from the firm FOREX FIT INTERNATIONAL GROUP when the individuals mentioned opened the FOREX account in the same branch.

The foregoing means that when they filled-in the forms and opening documents of said banking activity, they established that they held accounts at BANK OF AMERICA, this is the case of BARROS VELEZ, holder of account ▮▮▮▮▮7378 and BLACKMAN OVERSEAS with account number ▮▮▮▮▮▮612, this latter company appears represented by BARROS VELEZ and ISAZA VELASQUEZ.

This is to answer the request.  If you have further questions do not hesitate and contact me.
Respectfully,

JORGE EDUARDO GARCIA GIRALDO
Sectional Prosecutor 14

1

| 105TH CONGRESS 1st Session | SENATE | TREATY DOC. 105–25 |
|---|---|---|

## INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS WITH RELATED OPTIONAL PROTOCOL

———

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS, ADOPTED AT THE TWENTY-SECOND REGULAR SESSION OF THE ORGANIZATION OF AMERICAN STATES (OAS) GENERAL ASSEMBLY MEETING IN NASSAU, THE BAHAMAS, ON MAY 23, 1992, AND THE OPTIONAL PROTOCOL RELATED TO THE INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS, ADOPTED AT THE TWENTY-THIRD REGULAR SESSION OF THE OAS GENERAL ASSEMBLY MEETING IN MANAGUA, NICARAGUA, ON JUNE 11, 1993. BOTH INSTRUMENTS SIGNED ON BEHALF OF THE UNITED STATES AT OAS HEADQUARTERS IN WASHINGTON ON JANUARY 10, 1995



SEPTEMBER 3, 1997.—Treaty was read the first time and, together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

———

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1997

39–118

# LETTER OF TRANSMITTAL

—————————

THE WHITE HOUSE, *September 3, 1997.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Convention"), adopted at the twenty-second regular session of the Organization of American States (OAS) General Assembly meeting in Nassau, The Bahamas, on May 23, 1992, and the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Protocol"), adopted at the twenty-third regular session of the OAS General Assembly meeting in Managua, Nicaragua, on June 11, 1993. Both of these instruments were signed on behalf of the United States at the OAS headquarters in Washington on January 10, 1995. In addition, for the information of the Senate, I transmit the report of the Department of State with respect to the Convention and the Protocol.

When ratified, the Convention and the Protocol will constitute the first multilateral convention between the United States and other members of the OAS in the field of international judicial cooperation in criminal matters. The provisions of the Convention and Protocol are explained in the report of the Department of State that accompanies this message.

The Convention and Protocol will establish a treaty-based system of judicial assistance in criminal matters analogous to that which exists bilaterally between the United States and a number of countries. These instruments should prove to be effective tools to assist in the prosecution of a wide variety of modern criminals, including members of drug cartels, "white-collar" criminals, and terrorists. The Convention and Protocol are self-executing, and will not require implementing legislation.

The Convention provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Convention includes: (1) taking testimony or statements of persons; (2) providing documents, records, and articles of evidence; (3) serving documents; (4) locating or identifying persons or items; (5) transferring persons in custody for testimony or other purposes; (6) executing requests for searches and seizures; (7) assisting in forfeiture proceedings; and (8) rendering any other form of assistance not prohibited by the laws of the Requested State.

The Protocol was negotiated and adopted at the insistence of the United States Government, and will permit a greater measure of cooperation in connection with tax offenses. I believe that the Convention should not be ratified by the United States without the

IV

Protocol. If the Convention and Protocol are ratified, the instruments of ratification would be deposited simultaneously.

One significant advantage of this Convention and Protocol is that they provide uniform procedures and rules for cooperation in criminal matters by all the states that become Party. In addition, the Convention and Protocol would obviate the expenditure of resources that would be required for the United States to negotiate and bring into force bilateral mutual assistance treaties with certain OAS member states.

I recommend that the Senate give early and favorable consideration to the Convention and the Protocol, and that it give its advice and consent to ratification, subject to the understandings described in the accompanying report of the Department of State.

WILLIAM J. CLINTON.

# LETTER OF SUBMITTAL

———————

DEPARTMENT OF STATE,
*Washington, June 18, 1997.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to transmittal to the Senate for its advice and consent to ratification, the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Convention"), and the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters ("the Protocol"). The Convention was adopted and opened for signature at the twenty-second regular session of the General Assembly meeting of the Organization of American States (OAS) in Nassau, The Bahamas in May 1992. The Protocol was adopted and opened for signature at the twenty-third regular session of the OAS General Assembly meeting in Managua, Nicaragua in June 1993. Both the Convention and the Protocol were signed by the United States on January 10, 1995 at the OAS headquarters in Washington. I recommend that both the Convention and Protocol be transmitted to the Senate for its advice and consent to ratification.

To date, ten states have signed the Convention (Brazil, Canada, Ecuador, Grenada, Nicaragua, Peru, Suriname, the United States, Uruguay and Venezuela). Three states (Venezuela, Peru, and Canada) have ratified, and the Convention entered into force on April 14, 1996. However, only three states (the United States, Brazil, and Ecuador) have signed the protocol, and none has ratified it. Thus, the Protocol is not yet in force.

The Convention and Protocol establish a treaty-based system of mutual assistance among the OAS member states in criminal matters, analogous to that which exists pursuant to bilateral mutual legal assistance treaties between the United States and a number of countries. This Convention contains many provisions similar to those in our bilateral treaties. It will enhance our ability to investigate and prosecute a variety of offenses, including violent crimes, drug trafficking, fraud and while-collar crimes. The Convention is designed to be self-executing and will not require implementing legislation.

The United States declined initially to sign the Convention because, among other reasons, it limited assistance in cases involving tax offenses. The United States therefore proposed the draft of the Protocol to the Convention for consideration at the twenty-third regular session of the OAS General Assembly, which met in Managua, Nicaragua in 1993. The text of the Protocol that was adopted

(V)

VI

during that session is generally based on the draft that was proposed by the United States. The relevant U.S. Government agencies believe the Convention should not be ratified by the United States without the Protocol. If both are ratified, the instruments of ratification would be submitted simultaneously.

The Convention consists of forty articles. Chapter I (Articles 1–9) contains the Convention's general provisions. Article 1 states the purpose of the Convention, which is for the Parties to render to one another mutual assistance in criminal matters, in accordance with the provisions of the Convention.

Article 2 defines the scope and application of the Convention. Specifically, the Parties are obligated to render to one another mutual assistance in investigations, prosecutions, and proceedings that pertain to crimes over which the Requesting State has jurisdiction at the time the assistance is requested. In addition, this Article expressly states that the Convention does not authorize any Party to undertake, in the territory of another Party, the exercise of jurisdiction or the performance of functions that are placed within the exclusive purview of the authorities of that other Party by its domestic law. Finally, Article 2 stipulates that the Convention's provisions do not create any right on the part of any private person to obtain or exclude any evidence or to impede execution of any request for assistance.

Article 3 provides that each state will designate a central authority that shall be responsible for issuing and receiving requests for assistance. For the United States, the central authority would be the Attorney General, or such person or persons as the Attorney General may designate. The central authorities shall communicate directly with one another for purposes of implementation of the Convention.

Article 4 specifies that, in light of the diversity of legal systems of the Parties, assistance under the Convention shall be based on requests for cooperation that emanate from those authorities in the Requesting State that are responsible for criminal investigation or prosecution.

Article 5 states that assistance under the Convention shall generally not be subject to a "dual criminality" requirement; that is, assistance shall be rendered even if the act that gives rise to it is not punishable under the legislation of the Requested State. However, the Article authorizes the Requested State to refuse assistance on grounds of lack of dual criminality when the request pertains to either of two measures: (a) immobilization and sequestration of property; and (b) searches and seizures (including house searches). Although the United States generally prefers to avoid the inclusion of dual criminality requirements in its mutual legal assistance treaties, the above-cited exceptions in Article 5 will confer on the United States the discretion to decline to provide assistance in connection with certain measures that under U.S. law are subject to constitutional limitations, in cases where the criminal laws of the Requesting State proscribe conduct that is not punishable under United States law.

Article 6 provides that the act that gives rise to the request must be punishable by one year or more of imprisonment in the Requesting State.

VII

Article 7 contains a non-exhaustive list of the major types of assistance to be provided under the Convention, including notification of rulings and judgments; taking of testimony or statements from persons; summoning of witnesses and expert witnesses to provide testimony; immobilization and sequestration of property, freezing of assets, and assistance in procedures related to seizures; searches or seizures; examinations of objects and places; service of judicial documents; transmittal of documents, reports, information, and evidence; and transfer of detained persons for the purposes of the Convention. The Article provides that any other procedure may also be covered by the Convention upon agreement between the Requesting State and the Requested State.

Article 8 states that the Convention shall not apply to crimes that are subject exclusively to military legislation.

Article 9 sets forth the grounds upon which the Requested State may refuse assistance. Specifically, the Requested State may decline assistance if it determines that the request is being used to prosecute a person on a charge with respect to which the person has already been sentenced or acquitted in a trail in the Requesting or Requested State. Assistance may also be refused if the investigation has been initiated for the purpose of prosecuting, punishing, or discriminating in any way against an individual or group of persons for reason of sex, race, social status, nationality, religion, or ideology. In addition, a request may be denied if it refers to a crime that is political or related to a political crime, or to a common crime prosecuted for political reasons. Article 9 also gives the Requested State the discretion to deny assistance if the request has been issued at the request of a special or ad hoc tribunal; or if public policy (order public), sovereignty, security or basic public interests would be prejudiced.

Article 9 provides, finally, that a request may be denied if it pertains to a tax crime. However, Article 9 stipulates that assistance in connection with tax crimes shall be granted if the offense is committed by way of an intentionally incorrect statement, whether oral or written, or by way of an intentional failure to declare income derived from any other offense covered by the Convention for the purpose of concealing such income. In addition, cooperation with respect to tax offenses is subject to the terms of the Protocol for those states that are Parties to that instrument.

Chapter II (Articles 10–16) describes procedures for the filing, processing and execution of requests for assistance. Article 10 provides that requests shall be made in writing and executed in accordance with the domestic law of the Requested State.

Article 11 permits the Requested State to postpone execution of any request if doing so is necessary to continue an investigation or proceeding in progress in the Requested State. In such cases, the Requested State must provide an explanation of its grounds for postponing execution of the request.

Article 12 stipulates that documents and objects delivered in compliance with a request for assistance shall be returned to the Requested State as soon as possible, unless the latter decides otherwise.

Article 13 provides that the Requested State shall execute requests for search, seizure, attachment, and surrender of any items,

VIII

documents, records, or effects, if the competent authority determines that the request contains information that justifies the proposed action. Such action is subject to the procedural and substantive law of the Requested State. Furthermore, the Article provides that the Requested State shall determine, according to its law, what requirements must be met to protect the interests held by third parties in the items that are to be transferred.

Article 14 authorizes the central authority of any Party to convey to its counterparts in other Parties information it has on the existence of proceeds, fruits, or instrumentalities of a crime in the territory of those Parties.

Article 15 requires the Parties to assist each other, to the extent permitted by their respective laws, in precautionary measures and measures for securing the proceeds, fruits, and instrumentalities of the crime.

Article 16 provides that the Requested State shall set the date and place for execution of the request for assistance and may so inform the Requesting State. The Article also authorizes officials and interested parties of the Requesting State or their representatives, after informing the central authority of the Requested State, to be present at and participate in the execution of the request for assistance, to the extent permissible under the law of the Requested State's authorities.

Chapter III (Articles 17–23) addresses the subjects of service of judicial decisions, judgments and verdicts, and the appearance of witnesses and expert witnesses. Article 17 provides that, at the request of the Requesting State, the Requested State shall serve notice of decisions, judgments, or other documents issued by the competent authorities of the Requesting State.

Article 18 directs that, at the request of the Requesting State, any person present in the Requested State may be summoned to appear before a competent authority, in accordance with the law of the Requested State, to give testimony or to provide documents, records, or evidence.

Article 19 states that, when the Requesting State requests that a person appear in its territory to give testimony or a report, the Requested State shall invite the witness or expert witness to appear voluntarily, without the use of threats or coercive measures, before the appropriate authority in the Requesting State.

Article 20 addresses the subject of transfers of persons subject to criminal proceedings. The Article authorizes temporary transfers to the Requesting State, for the purpose of assistance under the Convention, of persons subject to criminal proceedings in the Requested State, but only if the person and the Requested State consent. The article also authorizes transfers to the Requested State of persons subject to criminal proceedings in the Requesting State, but only if the person and both states consent.

The Article enunciates grounds for denial of a request for transfer, including instances in which the individual in custody refuses to consent to the transfer; when the person's presence is necessary in an investigation or criminal proceeding that is under way in the jurisdiction to which he is subject at the time; and when there are other considerations, whether legal or of another nature, as deter-

lowoff

mined by the competent authority of the Requested or Requesting State.

Article 20 also stipulates that the receiving state shall have the obligation to keep the transferred person in physical custody; that it shall return the transferred person to the sending state as soon as possible or as agreed by the central authorities of the two states; and that the sending state shall not be required to initiate extradition proceedings for the return of the transferred person. In addition, the transferred person shall receive credit toward service of the sentence imposed in the sending state for time served in the receiving state; and the length of time spent by the person in the receiving state shall not exceed the period remaining for service of the sentence or 60 days, whichever is less, unless the person and both states agree to an extension of time.

Article 21 obligates the Parties to render cooperation, to the extent possible, for travel through their territory of the persons mentioned in Article 20, provided that the central authorities of the transit state are given due advance notice and that such persons travel in the custody of agents of the Requesting State (except where air transportation is used and no landing is scheduled in the territory of the Party to be overflown).

Article 22 requires, upon request of the person being transferred from the sending state, that the receiving state grant safe-conduct to the person. This means that the person shall not be detained or prosecuted for offenses committed prior to the transfer; be required to make a statement or give testimony in proceedings not specified in the request; or be detained or prosecuted on the basis of any statement he makes, except in case of contempt of court or perjury.

Article 23 provides that, in connection with witnesses or expert witnesses, documents containing the relevant questions, interrogatories, or questionnaires shall be forwarded to the extent possible or necessary.

Chapter IV (Articles 24–25) addresses the issue of transmittal of information and records. Article 24 provides that, upon request, the Requested State shall make available to the Requesting State a copy of the public documents, records, or information held by the government agencies or departments of the Requested State. In addition, the Requested State may make available such government information and records that are not public, but only to the same extent as it would make such available to its own judicial authorities or to others responsible for application of the law.

Article 25 prohibits the Requesting State from disclosing or using any information or evidence obtained in the course of application of the Convention for purposes other than those specified in the request, unless consent is obtained from the central authority of the Requested State. To ensure that the Convention is implemented consistent with existing U.S. legislation, I recommend that the following understanding to Article 25 be included in the United States instrument of ratification:

> The United States understands that Article 25 of the Convention, which limits disclosure or use of information or evidence obtained under the Convention, shall no longer apply if such information or evidence is made public, in a

x

manner consistent with Article 25, in the course of pro-
ceedings in the Requesting State.

Article 25 further provides that, when necessary, the Requested
State may ask that the information or evidence provided remain
confidential according to conditions specified by the central author-
ity.

Chapter V (Articles 26–31) sets forth the procedures that govern
the presentation and processing of requests. Article 26 specifies the
information that requests for assistance must contain, including a
statement of the crime to which the procedure refers; a summary
of the relevant facts; the nature of the proceeding giving rise to the
request for assistance; a precise description of the assistance re-
quested and any information necessary for the fulfillment of such
request; and, where pertinent, a description of any proceeding or
other special requirement of the Requesting State.

Article 26 also provides that when the Requested State is unable
to comply with a request, it must return the request to the Re-
questing State with an explanation of the reasons therefor. The Re-
quested State may request additional information when necessary
for fulfillment of the request under its domestic law or to facilitate
such fulfillment.

Article 27 eliminates any requirement for certification or authen-
tication of documents, so long as the documents are processed
through the central authorities in accordance with the Convention.

Article 28 requires that requests for assistance and their accom-
panying documentation be translated into an official language of
the Requested State.

Article 29 renders the Requested State responsible for all regular
costs of executing a request in its territory, except for fees for ex-
pert witnesses, travel costs, and other expenses related to the
transportation of persons from the territory of the state to that of
the other, which shall be borne by the Requesting State.

Article 30 permits the Parties to exchange information on mat-
ters related to the application of the Convention, for the purpose
of furthering the treaty's implementation.

Article 31 directs that the domestic law of each Party shall gov-
ern liability for damages arising from the acts of its authorities in
the execution of the Convention. The Article also exempts the Par-
ties from liability for damages that may arise from the acts com-
mitted by the authorities of another Party in the formulation or
execution of a request under the Convention.

Chapter VI (Articles 32–40) sets forth the final clauses. Article
32 provides that the Convention shall be open for signature by the
member states of the Organization of American States.

Article 33 renders the Convention subject to ratification, and re-
quires that instruments of ratification be deposited with the Gen-
eral Secretariat of the Organization of American States.

Article 34 opens the Convention to accession by any other state,
and requires that instruments of accession be deposited with the
OAS General Secretariat.

Article 35 permits each state to make reservations to the Con-
vention at the time of signature, approval, ratification, or accession,
provided that each reservation concerns at least one specific provi-

XI

sion and is not incompatible with the object and purpose of the
Convention.

Article 36 provides that the Convention shall not be interpreted
as affecting or restricting obligations in effect under any other bi-
lateral or multilateral convention, or provisions therein, relating to
international criminal judicial assistance, or more favorable prac-
tices that those states may observe in the matter. The United
States wishes to ensure that more favorable provisions in bilateral
treaties not be prejudiced by the OAS MLAT, and that accession
to this Convention not be interpreted as indicative of the United
States Government's willingness to include identical provisions in
future bilateral treaties. For these reasons, the United States made
a statement at the OAS General Assembly in Nassau, The Baha-
mas, in 1992, emphasizing the provisions of this Article. In order
to stress this point formally, I recommend that the following under-
standing be included in the United States instrument of ratifica-
tion of both the Convention and the Protocol:

> The United States understands that the Convention and
> Optional Protocol are not intended to replace, supersede,
> obviate or otherwise interfere with any other bilateral or
> multilateral treaties or conventions, including those that
> relate to mutual assistance in criminal matters.

Article 37 states that the Convention shall enter into force on the
thirtieth day following the date of deposit of the second instrument
of ratification. For each state that ratifies or accedes to the Con-
vention after the deposit of the second instrument of ratification,
the Convention shall enter into force on the thirtieth day after de-
posit by such state of its instrument of ratification or accession.

Article 38 provides that if a Party has two or more territorial
units in which different systems of law govern matters addressed
in the Convention, it shall state at the time of signature, ratifica-
tion, or accession whether the Convention shall apply to all of its
territorial units or only to one or more of them.

Article 39 sets forth the termination clause of the Convention. It
states that the Convention shall remain in force indefinitely, but
that any Party may denounce or terminate it. The instrument of
denunciation must be deposited with the OAS General Secretariat.
The Convention shall cease to be in force for the denouncing state
one year from the date of deposit of the instrument of denuncia-
tion.

Article 40 provides that the English, French, Spanish and Por-
tuguese texts of the Convention are equally authentic, and that the
original instruments in each of those languages shall be deposited
with the OAS General Secretariat, which shall forward authenti-
cated copies of the text of the United Nations General Secretariat
for registration and publication. Finally, this Article indicates that
the OAS General Secretariat shall notify the OAS member states,
as well as those states that have acceded to the Convention, of the
signatures and deposits of instruments of ratification, accession,
and denunciation, and of reservations, if any, as well as the state-
ments specified in Article 38 of the Convention.

The Protocol consists of five Articles. The first Article provides
that Parties to the Protocol shall not exercise the right con-

XII

templated in Article 9.f of the Convention to refuse a request for assistance from another Party to the Protocol solely on the ground that the request concerns a tax crime.

Article 2 provides that, when acting as a Requested State under the Convention, Parties to the Protocol shall not decline assistance that requires the measures referred to in Article 5 of the Convention, if the act specified in the request corresponds to a tax crime of the same nature under the laws of the Requested State.

Articles 3, 4, and 5 contain the final clauses. Article 3 articulates which states can become Parties or accede to the Convention, and imposes requirements regarding the deposit of instruments of ratification or accession. This Article also specifies conditions for the filing of reservations, and includes a paragraph stating that the Protocol shall not be interpreted as affecting or restricting obligations under other treaties or practices with respect to international criminal assistance. As mentioned above in connection with Article 36 of the Convention, I recommend that the following understanding be included in the United States instrument of ratification of both the Convention and the Protocol:

> The United States understands that the Convention and Optional Protocol are not intended to replace, supersede, obviate or otherwise interfere with any other bilateral or multilateral treaties or conventions, including those that relate to mutual assistance in criminal matters.

Finally, Article 3 sets forth provisions regarding entry into force of the Protocol, and requiring statements by countries with two or more territorial units on the application of the Protocol to such units.

Article 4 provides that the Protocol shall remain in force as long as the Convention does, but that any of the Parties may denounce it. The instrument of denunciation must be deposited with the OAS General Secretariat, and the Protocol would cease to be in effect for the denouncing state one year from the date of such deposit.

Article 5 requires that the original text of the Protocol in the four OAS languages be deposited with the OAS General Secretariat, and that the latter forward authenticated copies of the text to the United Nations Secretariat for registration. Finally, Article 5 directs the OAS General Secretariat to notify the OAS member states and acceding states of the signatures and deposits of instruments of ratification, accession, and denunciation, as well as reservations, if any, and the statements specified in Article 3.

It is my belief that this Convention and the Protocol would afford substantial benefits to the United States, and would be fully consistent with existing United States legislation.

A Technical Analysis explaining in detail the provisions of the Convention and the Protocol was prepared by the United States negotiating delegation and will be transmitted separately to the Senate Committee on Foreign Relations.

XIII

   The Departments of Justice and Treasury join the Department of State in recommending that the Convention and the Protocol be transmitted to the Senate at an early date for its advice and consent to ratification, subject to the understandings described above.
   Respectfully submitted,

MADELEINE ALBRIGHT.

CONVENCION INTERAMERICANA SOBRE
ASISTENCIA MUTUA EN MATERIA PENAL
Adoptada en Nassau, Bahamas,
el 23 de mayo de 1992,
en el Vigésimo Segundo Período Ordinario
de Sesiones de la Asamblea General

INTER-AMERICAN CONVENTION ON MUTUAL
ASSISTANCE IN CRIMINAL MATTERS
Adopted at Nassau, Bahamas,
on May 23, 1992,
at the Second Regular Session of
the General Assembly

CONVENÇÃO INTERAMERICANA SOBRE ASSISTÊNCIA
MÚTUA EM MATÉRIA PENAL
Adotado em Nassau, Bahamas, em
23 de maio de 1992,
no Vigésimo Segundo Período Ordinário de
Sessões da Assembléia Geral

CONVENTION INTERAMERICAINE SUR L'ENTRAIDE
EN MATIERE PENALE
Adopté à Nassau, Bahamas, le
23 de mai de 1992,
lors de la vingt deuxième
Session Ordinaire de l'Assemblée Générale

(1)

2

**INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE
IN CRIMINAL MATTERS**

3

**INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE
IN CRIMINAL MATTERS**

**PREAMBLE**

WHEREAS:

The Charter of the Organization of American States, in Article 2.e, establishes that an essential objective of the American states is "to seek the solution of political, juridical, and economic problems that may arise among them"; and

The adoption of common rules in the field of mutual assistance in criminal matters will contribute to the attainment of this goal,

THE MEMBER STATES OF THE ORGANIZATION OF AMERICAN STATES

Do hereby adopt the following Inter-American Convention on Mutual Assistance in Criminal Matters:

**CHAPTER I**

**GENERAL PROVISIONS**

_Article 1_.  PURPOSE OF THE CONVENTION

The states parties undertake to render to one another mutual assistance in criminal matters, in accordance with the provisions of this convention.

_Article 2_.  SCOPE AND APPLICATION OF THE CONVENTION

The states parties shall render to one another mutual assistance in investigations, prosecutions, and proceedings that pertain to crimes over which the requesting state has jurisdiction at the time the assistance is requested.

This convention does not authorize any state party to undertake, in the territory of another state party, the exercise of jurisdiction or the performance of functions that are placed within the exclusive purview of the authorities of that other party by its domestic law.

This convention applies solely to the provision of mutual assistance among states parties.  Its provisions shall not create any right on the part of any private person to obtain or exclude any evidence or to impede execution of any request for assistance.

_Article 3_.  CENTRAL AUTHORITY

Each state shall designate a central authority at the time of signature or ratification of this convention or accession hereto.

- 12 -

4

The central authorities shall be responsible for issuing and receiving requests for assistance.

The central authorities shall communicate directly with one another for all purposes of this convention.

### Article 4

In view of the diversity of the legal systems of the states parties, the assistance to which this convention refers shall be based upon requests for cooperation from the authorities responsible for criminal investigation or prosecution in the requesting state.

### Article 5.   DOUBLE CRIMINALITY

The assistance shall be rendered even if the act that gives rise to it is not punishable under the legislation of the requested state.

When the request for assistance pertains to the following measures: (a) immobilization and sequestration of property and (b) searches and seizures, including house searches, the requested state may decline to render the assistance if the act that gives rise to the request is not punishable under its legislation.

### Article 6

For the purposes of this convention, the act that gives rise to the request must be punishable by one year or more of imprisonment in the requesting state.

### Article 7.   SCOPE OF APPLICATION

The assistance envisaged under this convention shall include the following procedures, among others:

a.   notification of rulings and judgments;

b.   taking of testimony or statements from persons;

c.   summoning of witnesses and expert witnesses to provide testimony;

d.   immobilization and sequestration of property, freezing of assets, and assistance in procedures related to seizures;

e.   searches or seizures;

f.   examination of objects and places;

g.   service of judicial documents;

h.   transmittal of documents, reports, information, and evidence;

- 13 -

5

i.   transfer of detained persons for the purpose of this convention; and

j.   any other procedure provided there is agreement between the requesting state and the requested state.

Article 8.   MILITARY CRIMES

This convention shall not apply to crimes that are subject exclusively to military legislation.

Article 9.   REFUSAL OF ASSISTANCE

The requested state may refuse assistance when it determines that:

a.   The request for assistance is being used in order to prosecute a person on a charge with respect to which that person has already been sentenced or acquitted in a trial in the requesting or requested state;

b.   The investigation has been initiated for the purpose of prosecuting, punishing, or discriminating in any way against an individual or group of persons for reason of sex, race, social status, nationality, religion, or ideology;

c.   The request refers to a crime that is political or related to a political crime, or to a common crime prosecuted for political reasons;

d.   The request has been issued at the request of a special or ad hoc tribunal;

e.   Public policy (_ordre public_), sovereignty, security, or basic public interests are prejudiced; and

f.   The request pertains to a tax crime. Nevertheless, the assistance shall be granted if the offense is committed by way of an intentionally incorrect statement, whether oral or written, or by way of an intentional failure to declare income derived from any other offense covered by this convention for the purpose of concealing such income.

CHAPTER II

REQUESTS FOR ASSISTANCE, PROCESSING AND EXECUTION

Article 10.   REQUESTS FOR ASSISTANCE

Requests for assistance issued by the requesting state shall be made in writing and shall be executed in accordance with the domestic law of the requested state.

6

The procedures specified in the request for assistance shall be fulfilled in the manner indicated by the requesting state insofar as the law of the requested state is not violated.

Article 11

The requested state may postpone the execution of any request that has been made to it, with an explanation of its grounds for doing so, if it is necessary to continue an investigation or proceeding in progress in the requested state.

Article 12

Documents and objects delivered in compliance with a request for assistance shall be returned to the requested state as soon as possible, unless the latter decides otherwise.

Article 13. SEARCH, SEIZURE, ATTACHMENT, AND SURRENDER OF PROPERTY

The requested state shall execute requests for search, seizure, attachment, and surrender of any items, documents, records, or effects, if the competent authority determines that the request contains information that justifies the proposed action. That action shall be subject to the procedural and substantive law of the requested state.

In accordance with the provisions of this convention, the requested state shall determine, according to its law, what requirements must be met to protect the interests held by third parties in the items that are to be transferred.

Article 14. MEASURES FOR SECURING ASSETS

The central authority of any party may convey to the central authority of any other party information it has on the existence of proceeds, fruits, or instrumentalities of a crime in the territory of that other party.

Article 15

The parties shall assist each other, to the extent permitted by their respective laws, in precautionary measures and measures for securing the proceeds, fruits, and instrumentalities of the crime.

Article 16. DATE, PLACE AND MODALITY OF THE EXECUTION OF THE REQUEST FOR ASSISTANCE

The requested state shall set the date and place for execution of the request for assistance and may so inform the requesting state.

Officials and interested parties of the requesting state or their representatives may, after informing the central

- 15 -

7

authority of the requested state, be present at and participate in the execution of the request for assistance, to the extent not prohibited by the law of the requested state, and provided that the authorities of the requested state have given their express consent thereto.

CHAPTER III

SERVICE OF JUDICIAL DECISIONS, JUDGMENTS, AND VERDICTS, AND APPEARANCE OF WITNESSES AND EXPERT WITNESSES

### Article 17

At the request of the requesting state, the requested state shall serve notice of decisions, judgments, or other documents issued by the competent authorities of the requesting state.

### Article 18. TESTIMONY IN THE REQUESTED STATE

At the request of the requesting state, any person present in the requested state shall be summoned to appear before a competent authority, in accordance with the law of the requested state, to give testimony or to provide documents, records, or evidence.

### Article 19. TESTIMONY IN THE REQUESTING STATE

When the requesting state requests that a person appear in its territory to give testimony or a report, the requested state shall invite the witness or expert witness to appear voluntarily, without the use of threats or coercive measures, before the appropriate authority in the requesting state. If deemed necessary, the central authority of the requested state may make a written record of the individual's willingness to appear in the requesting state. The central authority of the requested state shall promptly inform the central authority of the requesting state of the response of the person.

### Article 20. TRANSFER OF PERSONS SUBJECT TO CRIMINAL PROCEEDINGS

A person subject to criminal proceedings in the requested state whose presence in the requesting state is needed for purposes of assistance under this convention shall be transferred temporarily to the requesting state for that purpose if the person and the requested state consent to the transfer.

A person subject to criminal proceedings in the requesting state whose presence in the requested state is needed for purposes of assistance under this convention shall be transferred temporarily to the requested state if the person consents and both states agree.

- 16 -

8

The actions set forth above may be denied for the following reasons, among others:

a. the individual in custody or serving a sentence refuses to consent to the transfer;

b. as long as his presence is necessary in an investigation or criminal proceeding that is under way in the jurisdiction to which he is subject at the time;

c. there are other considerations, whether legal or of another nature, as determined by the competent authority of the requested or requesting state.

For purposes of this article:

a. the receiving state shall have the authority and the obligation to keep the transferred person in physical custody unless otherwise indicated by the sending state;

b. the receiving state shall return the transferred person to the sending state as soon as circumstances permit or as otherwise agreed by the central authorities of the two states;

c. the sending state shall not be required to initiate extradition proceedings for the return of the transferred person;

d. the transferred person shall receive credit toward service of the sentence imposed in the sending state for time served in the receiving state; and

e. the length of time spent by the person in the receiving state shall never exceed the period remaining for service of the sentence or 60 days, whichever is less, unless the person and both states agree to an extension of time.

<u>Article 21</u>. TRANSIT

The states parties shall render cooperation, to the extent possible, for travel through their territory of the persons mentioned in the preceding article, provided that the respective central authority has been given due advance notice and that such persons travel in the custody of agents of the requesting state.

Such prior notice shall not be necessary when air transportation is used and no regular landing is scheduled in the territory of the state party or states parties to be overflown.

- 17 -

9

## Article 22. SAFE-CONDUCT

The appearance or transfer of the person who agrees to render a statement or to testify under the provisions of this convention shall require, if the person or the sending state so requests prior to such appearance or transfer, that the receiving state grant safe-conduct under which the person, while in the receiving state, shall not:

    a.   be detained or prosecuted for offenses committed prior to his departure from the territory of the sending state;

    b.   be required to make a statement or to give testimony in proceedings not specified in the request; or

    c.   be detained or prosecuted on the basis of any statement he makes, except in case of contempt of court or perjury.

The safe-conduct specified in the preceding paragraph shall cease when the person voluntarily prolongs his stay in the territory of the receiving state for more than 10 days after his presence is no longer necessary in that state, as communicated to the sending state.

## Article 23

In connection with witnesses or expert witnesses, documents containing the relevant questions, interrogatories, or questionnaires shall be forwarded to the extent possible or necessary.

### CHAPTER IV

### TRANSMITTAL OF INFORMATION AND RECORDS

## Article 24

In cases where assistance is carried out under this convention, the requested state, upon request and in accordance with its domestic procedure, shall make available to the requesting state a copy of the public documents, records, or information held by the government agencies or departments of the requested state.

The requested state may make available copies of any document, record, or other information held by a government agency or department of that state that is not public in nature, to the same extent as and subject to the same conditions under which they would be made available to its own judicial authorities or to others responsible for application of the law. The requested state, at its own discretion, may deny, in whole or in part, any request made under the provisions of this paragraph.

10

**Article 25.** LIMITATION ON THE USE OF INFORMATION OR EVIDENCE

The requesting state may not disclose or use any information or evidence obtained in the course of application of this convention for purposes other than those specified in the request for assistance without prior consent from the central authority of the requested state.

In exceptional cases, if the requesting state needs to disclose and use, in whole or in part, the information or evidence for purposes other than those specified, it shall request authorization therefor from the requested state, which, at its discretion, may accede to or deny that request, in whole or in part.

The information or evidence that must be disclosed and used to the extent necessary for proper fulfillment of the procedure or formalities specified in the request shall not be subject to the authorization requirement set forth in this article.

When necessary, the requested state may ask that the information or evidence provided remain confidential according to conditions specified by the central authority. If the requesting party is unable to accede to such request, the central authorities shall confer in order to define mutually acceptable terms of confidentiality.

CHAPTER V

PROCEDURE

## Article 26

Requests for assistance shall contain the following details:

a. the crime to which the procedure refers; a summary description of the essential facts of the crime, investigation, or criminal proceeding in question; and a description of the facts to which the request refers;

b. proceeding giving rise to the request for assistance, with a precise description of such proceeding;

c. where pertinent, a description of any proceeding or other special requirement of the requesting state;

d. a precise description of the assistance requested and any information necessary for the fulfillment of that request.

11

When the requested state is unable to comply with a request for assistance, it shall return the request to the requesting state with an explanation of the reason therefor.

The requested state may request additional information when necessary for fulfillment of the request under its domestic law or to facilitate such fulfillment.

When necessary, the requesting state shall proceed in accordance with the provisions of the last paragraph of Article 24 of this convention.

### Article 27

Documents processed through the central authorities in accordance with this convention shall be exempt from certification or authentication.

### Article 28

Requests for assistance and the accompanying documentation must be translated into an official language of the requested state.

### Article 29

The requested state shall be responsible for all regular costs of executing a request in its territory, except for those listed below, which shall be borne by the requesting state:

a.  fees for expert witnesses; and

b.  travel costs and other expenses related to the transportation of persons from the territory of one state to that of the other.

If it appears that the processing of the request might entail unusual costs, the states parties shall confer to determine the terms and conditions under which the assistance could be rendered.

### Article 30

To the extent that they find it useful and necessary for furthering the implementation of this convention, the states parties may exchange information on matters related to its application.

### Article 31

The domestic law of each party shall govern liability for damages arising from the acts of its authorities in the execution of this Convention.

Neither party shall be liable for damages that may arise from the acts committed by the authorities of the other

- 20 -

12

party in the formulation or execution of a request under this Convention.

CHAPTER VI

FINAL CLAUSES

Article 32

This convention shall be open for signature by the member states of the Organization of American States.

Article 33

This convention is subject to ratification. The instruments of ratification shall be deposited with the General Secretariat of the Organization of American States.

Article 34

This convention shall remain open for accession by any other state. The instruments of accession shall be deposited with the General Secretariat of the Organization of American States.

Article 35

Each state may make reservations to this convention at the time of signature, approval, ratification, or accession, provided that each reservation concerns at least one specific provision and is not incompatible with the object and purpose of the convention.

Article 36

This convention shall not be interpreted as affecting or restricting obligations in effect under any other international, bilateral, or multilateral convention that contains or might contain clauses governing specific aspects of international criminal judicial assistance, wholly or in part, or more favorable practices which those states might observe in the matter.

Article 37

This convention shall enter into force on the thirtieth day following the date of deposit of the second instrument of ratification.

For each state that ratifies or accedes to the convention after the deposit of the second instrument of ratification, the convention shall enter into force on the thirtieth day after deposit by such state of its instrument of ratification or accession.

- 21 -

13

## Article 38

If a state party has two or more territorial units in which different systems of law govern matters addressed in this convention, it shall state at the time of signature, ratification, or accession whether this convention will apply to all of its territorial units or only to one or more of them.

Such statements may be amended by way of subsequent statements, which shall expressly indicate the territorial unit or units to which the convention shall apply. Such subsequent declarations shall be transmitted to the General Secretariat of the Organization of American States, and shall become effective thirty days after the date of their receipt.

## Article 39

This convention shall remain in force indefinitely, but any of the states parties may denounce it. The instrument of denunciation shall be deposited with the General Secretariat of the Organization of American States. After one year from the date of deposit of the instrument of denunciation, the convention shall cease to be in effect for the denouncing state, but shall remain in effect for the other states parties.

## Article 40

The original instrument of this convention, the English, French, Portuguese, and Spanish texts of which are equally authentic, shall be deposited with the General Secretariat of the Organization of American States, which shall forward authenticated copies of the text to the United Nations General Secretariat for registration and publication, in accordance with Article 102 of the United Nations Charter. The General Secretariat of the Organization of American States shall notify the member states of that Organization and those states that have acceded to the convention of the signatures and deposits of instruments of ratification, accession, and denunciation, as well as of reservations, if any. It shall also transmit to them the statements specified in Article 38 of this convention.

14

ORGANIZATION OF AMERICAN STATES

WASHINGTON, D.C.

GENERAL SECRETARIAT

Certifico que el documento preinserto es copia fiel y exacta de los textos auténticos en español, inglés, portugués y francés de la Convención Interamericana sobre Asistencia Mutua en Materia Penal, suscrita en Nassau, Bahamas, el 23 de mayo de 1992, en el vigésimo segundo período ordinario de sesiones de la Asamblea General de la Organización de los Estados Americanos, y que los textos firmados de dichos originales se encuentran depositados en la Secretaría General de la Organización de los Estados Americanos.

26 de marzo de 1996

I hereby certify that the foregoing document is a true and faithful copy of the authentic texts in Spanish, English, Portuguese and French of the Inter-American Convention on Mutual Assistance in Criminal Matters, signed at Nassau, Bahamas, on May 23, 1992, at the Twenty-second Regular Session of the General Assembly of the Organization of American States, and that the signed originals of these texts are on deposit with the General Secretariat of the Organization of American States.

March 26, 1996

Certifico que o documento transcrito é cópia fiel e exata dos textos autênticos em espanhol, inglês, português e francês da Convenção Interamericana sobre Assistência mútua em Matéria Penal, assinado em Nassau, Bahamas, em 23 de maio de 1992, no Vigésimo Segundo Período Ordinário de Sessões da Assembléia Geral, e que os textos originais assinados encontram-se depositados na Secretaria-Geral da Organização dos Estados Americanos.

26 de março de 1996

Je certifie que le document qui précède est une copie fidèle et conforme aux textes authentiques français, anglais, espagnol, et portugais de la Convention interaméricaine sur l'Enraide en Matière Penale, adopté à Nassau, Bahamas, le 23 mai 1992, lors de la vingt-deuxième Session ordinaire de l'Assemblée générale, et que des originaux signés de ces textes sont déposés auprès du Secrétariat général de l'Organisation des États Américains.

26 mars 1996

Por el Secretario General
For the Secretary General
Pelo Secretário-Geral
Pour le Secrétaire général

William M/Berenson

| | |
|---|---|
| Subsecretario de Asuntos Jurídicos Interino | Acting Asistant Secretary for Legal Affairs |
| Sub-Secretário Interino de Assuntos Jurídicos | Sous-secrétaire intérimaire pour les questions juridiques |

District of Columbia

:ss

Subscribed and sworn to before

me this 28th

day of March, 1996

Marie Luten Coldamin

Marie Cristina Coldamin

Notary Public

My Commission expires May 14, 2000

15

## OPTIONAL PROTOCOL RELATED TO THE INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

16

## OPTIONAL PROTOCOL RELATED TO THE
## INTER-AMERICAN CONVENTION ON
## MUTUAL ASSISTANCE IN CRIMINAL MATTERS

The member states of the Organization of American States,

BEARING IN MIND the Inter-American Convention on Mutual Assistance in Criminal Matters adopted at Nassau on May 23, 1992 (hereinafter referred to as "the Convention"),

HAVE AGREED to adopt the following Optional Protocol related to the Inter-American Convention on Mutual Assistance in Criminal Matters:

### ARTICLE 1

The states parties to this Protocol shall not exercise the right provided for in Article 9.f of the Convention to refuse a request for assistance solely on the ground that the request concern a tax crime in any case in which the request is from another state party to this Protocol.

### ARTICLE 2

The states parties to this Protocol, when acting as a requested state under the Convention, shall not decline assistance which requires the measures referred to in Article 5 of the Convention, if the act specified in the request corresponds to a tax crime of the same nature under the laws of the requested state.

### FINAL CLAUSES

### ARTICLE 3

1.     This Protocol shall be open for signature by member states of the Organization of American States at the OAS General Secretariat on and after January 1, 1994, and shall be subject to ratification or accession only by states parties to the Convention.

2.     This Protocol shall remain open for accession by any other state that accedes to or has acceded to the Convention under the conditions set forth in this article.

3.     The instruments of ratification and accession shall be deposited with the General Secretariat of the Organization of American States.

4.     Each state may make reservations to this Protocol at the time of signature, ratification, or accession, provided that each reservation is not incompatible with the object and purpose of the Protocol.

5.     This Protocol shall not be interpreted as affecting or restricting obligations in effect under other international, bilateral, or multilateral conventions that contain clauses governing any specific aspect of international criminal assistance, wholly or in part, or more favorable practices which those states might observe.

17

6.      This Protocol shall enter into force on the thirtieth day following the date on which two states parties have deposited their instruments of ratification or accession, provided that the Convention has entered into force.

7.      For each state that ratifies or accedes to the Protocol after the deposit of the second instrument of ratification or accession, the Protocol shall enter into force on the thirtieth day after deposit by such state of its instrument of ratification or accession, provided that such state is a party to the Convention.

8.      If a state party has two or more territorial units in which different systems of law govern matters addressed in this Protocol, it shall state at the time of signature, ratification, or accession whether this Protocol shall apply to all of its territorial units or only to one or more of them.

9.      Statements referred to in paragraph 8 of this Article may be amended by way of subsequent statements which shall expressly indicate the territorial units to which the Protocol shall apply. Such subsequent declarations shall be transmitted to the General Secretariat of the Organization of American States, and shall become effective thirty days after the date of receipt.

### ARTICLE 4

This Protocol shall remain in force as long as the Convention remains in force, but any of the states parties may denounce it. The instrument of denunciation shall be deposited with the General Secretariat of the Organization of American States. After one year from the date of the deposit of the instrument of denunciation, the Protocol shall cease to be in effect for the denouncing state, but shall remain in effect for the other states parties.

### ARTICLE 5

The original of this Protocol, the English, French, Portuguese, and Spanish texts of which are equally authentic, shall be deposited with the General Secretariat of the Organization of American States, which shall forward authenticated copies of the text to the United Nations Secretariat for registration.

The General Secretariat of the Organization of American States shall notify the member states of the Organization and those states that have acceded to the Convention and Protocol of the signatures and deposits of instruments of ratification, accession, and denunciation as well as reservations, if any. It shall also transmit to them the statements specified in Article 3 of this Protocol.

DONE IN MANAGUA, NICARAGUA, the eleventh day of June, one thousand nine hundred and ninety-three.

18

I hereby certify the foregoing document is a true and faithful copy of the authentic text in Spanish, English, French and Portuguese of the Optional Protocol Related to the Inter-American Convention on Mutual Assistance in Criminal Matters, adopted at Managua, Nicaragua, on June 11, 1993, at the twenty third regular session of the General Assembly of the Organization of American States, and that the above mentioned instrument is on deposit with the General Secretariat of the Organization of American States.

June 11, 1997

Jean Michel Arrighi
Acting Assistant Secretary for Legal Affairs
Organization of American States

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

IN RE: Request from Colombia Pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters in the Matter of David Barros Velez

**(b)**  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

JOHN C. SHIPLEY, AUSA
99 NE 4th Street
Miami, Florida 33132
Telephone No. (305) 961-9111

Attorneys (If Known)

FILED by _____ D.C.

MAR -3 2009

**(d)** Check County Where Action Arose: ☒ DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

Dade 09MC20527 - Lenard / Garber

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity)

28 USC § 1782 (Foreign Mutual Legal Assistance)

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____